**ALASKA AIRLINES, Inc., a corporation, Appellant,**

**v.**

**Arthur W. STEPHENSON, Appellee.**

**No. 13494.**

United States Court of Appeals
Ninth Circuit.

Nov. 26, 1954.

McCutcheon, Nesbett & Rader, Buell Nesbett, Anchorage, Alaska, Gerald J. McMahon, Harold Harper, New York City, Stuart G. Oles, Seattle, Wash., for appellant.

Davis, Renfrew & Hughes, Anchorage, Alaska, for appellee.

Before POPE, LEMMON and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Arthur W. Stephenson, plaintiff-appellee, is the discharged general manager of Alaska Airlines, Inc., a company organized under the laws of the Territory of

Alaska. The company was defendant in the trial court and is appellant herein. The case falls entirely on the territorial side of the district court in Alaska, i.e., no federal questions are presented and we take it that diversity of citizenship did not exist.[1]

Stephenson seems to have had through the years a varied career in the airlines. One day he is a pilot. The next day he is an executive. In September, 1950, he was a pilot regularly employed by Western Airlines. At Western he had certain rights to continued employment. But he could take a leave of absence therefrom for a period of not to exceed six months without prejudice to his rights of continued employment with Western.

Alaska Airlines, Inc., herein called Alaska, Inc., in 1950 was a small airline operating in the Territory of Alaska. It was living from day to day in the hope of obtaining a certificate to operate from the states, probably from Seattle, Washington, to Alaska. When that day should come, it was to be a big airline.

The financial headquarters of the company, at least, was in the City of New York. There R. W. Marshall, chairman of the board, had his office.

Stephenson went to New York on September 15, 1950, at the request of an aviation consultant company to be interviewed by Marshall. Then and there Stephenson was employed as general manager. He took leave of absence from Western and rather promptly commenced his duties. He eventually in mid-winter moved his family to Anchorage, Alaska, from Redondo Beach, California. In the winter of 1950–1951, with Stephenson's six months' leave with Western about to expire, he was in and out of New York pressing for a written contract of definite duration and of substantial length. He had one drawn up and conferred not only with Marshall but with the company's lawyer. He could not get it signed. The company wasn't signing any contracts, we take it, until it found out whether it was to have its certificate. Later on we shall advert to some of the discussions.

The certificate apparently was granted in May, 1951. It seems strange that with the granting of the certificate there followed no negotiations or steps to put the agreement in writing, if Alaska, Inc., had agreed to do so. But we do get the impression that by this time Stephenson had lost favor with the company. It appears that he was relieved of his duties about September 1, 1951, and was continued on the payroll until October 15, 1951.

Then Stephenson filed suit against Alaska, Inc., setting up two causes of action. The first claim is for salary beyond the time he was carried on the payroll. The second is for moneys he claimed due on his expense account and for salary admittedly due except for an offset claimed by Alaska, Inc. The evidence is in sharp conflict. If the jury had accepted Alaska, Inc.'s, testimony, it would have found Stephenson owed it money. On the claim for salary, it seems to us that Alaska, Inc., on the evidence, would have to concede that Stephenson sustained his burden of proof for $11,050 in unpaid salary awarded him by the jury. Of course, it does not concede the point.

But what of the statute of frauds and a contract clearly not to be performed fully within one year? Alaska, Inc., relied on the statute of frauds.[2] We have

---

1. Stephenson's citizenship was not pleaded.

2. The New York statute of frauds provides as follows:

New York Personal Property Law, McKinney's Consol.Laws, c. 41.

"§ 31. Agreements required to be in writing

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking;

"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime; * * *."

a contract made in New York to be performed entirely or almost entirely in Alaska. Does New York law apply, or does the law of the Territory of Alaska apply. And what of promissory estoppel.[3]

At the outset, one well may wonder if the courts from the beginning had vigorously enforced the statute of frauds from its first adoption in England, wouldn't we have less injustice? If people were brought up in the tradition that certain contracts inescapably had to be in writing, wouldn't those affected thereby get their contracts into writing and, on the whole, wouldn't the public be better off?

But we have to take the law as we find it. For generations, in hard cases, the courts have been making exceptions to "do justice," granting relief here, calling a halt there. The result is that one with difficulty can predict the result in a given state and the situation becomes more confounded when the query arises as to whose (what state's) law we should apply.

Stephenson's version of his employment may be summed up as follows:

1. When he was hired by Marshall the agreement was that he would go to work at $1,300 a month and that they would get together in six weeks to three months and work out a long-range agreement; that he was to have a raise when the certificate of convenience and necessity was granted for Alaska, Inc., to fly to and from the states.

2. Negotiations were had for the "contract" about January 6, 1951, in New York, with Marshall. At that time about all that was agreed definitely was that Stephenson should take his family with him to the Territory of Alaska. This he did. Then, about March 15, 1951, Stephenson, his leave with Western about to expire, was in New York at the company office, pressing Marshall for the contract. He made clear to Marshall that because of this contingency the employment had to be made definite and formalized. (The testimony wobbles, but the jury could have found that on March 16 or 17 Marshall orally hired Stephenson for a period of two years at a salary of $1,300 per month, with the further understanding that on the granting of the certificate Stephenson was to have an increase in salary and a written contract.) Thereupon, Stephenson let his right to return to Western expire.

New York many times has let down the bar on the statute of frauds. The members of this court have examined dozens of New York cases and have come to the conclusion that the New York state courts would probably deny Stephenson recovery here if the action were brought there. But of this we are not positive. See Roberts v. Fulmer, 301 N.Y. 277, 93 N.E.2d 846; Weiss v. Weiss, Sup., 49 N.Y.S.2d 128; In re Melia's Estate, Sur., 98 N.Y.S.2d 941; Porter v. Commissioner, 2 Cir., 60 F.2d 673; McLachlin v. Village of Whitehall, 114 App.Div. 315, 99 N.Y.S. 721; Kahn v. Cecelia Co., D.C., 40 F.Supp. 878.

█ But should we use New York law on this case in the Alaska forum? The latest authority of the highest New York court, Rubin v. Irving Trust Co., 305 N.Y. 288, 113 N.E.2d 424, where a contract without the statute of frauds in Florida was sued upon in New York, as we read it, says, inter alia, that New York's law is primarily procedural and

The Alaska statute reads:
Alaska Compiled Laws, Section 58-2-2
"In the following cases an agreement is void unless the same or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged or by his lawfully authorized agent: First. An agreement that by its terms is not to be performed within a year from the making thereof; * * *."

3. The term promissory estoppel generally is considered to be properly applied when the existence of "promissory estoppel" is used as a substitute for consideration in the law of contracts to create a binding contract. However, the term, correctly or not, is found in many cases where courts are making exceptions to prevent manifest injustice in statute of frauds cases. 3 Stanford Law Review 281.

perhaps substantive, too. Also, it seems to rely on the center of gravity of the contract, i.e., the contract though made in Florida concerned mainly New York business. If historically New York had declared clearly its statute of frauds one of substance only, going to the essential validity of the contract, comity would dictate that we follow it. Whether the Irving case is to be construed as a holding that the statute is procedural or as a holding that the center of gravity rule must be applied, we think it demonstrates that the New York courts would hold that the Alaska statute is the one to be applied in this case. We so hold.

Turning to the Alaska statute, what is it? Where did it come from? What history does it have behind it?

It would appear that it went to Alaska from Oregon. Oregon may have taken it from Iowa or New York. We find nothing in the decisions made by the Alaska courts (or by this court) or in Oregon prior to Alaska's adoption of the statute that will help us.

Section 90 of the Restatement of the Law of Contracts provides as follows:

"Promise reasonably inducing definite and substantial action.

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The foregoing section, not mentioning promissory estoppel, is addressed not to the statute of frauds but to promissory estoppel as a substitute for consideration. However, when one considers the part Samuel Williston took in the formulation of the Restatement of Contracts and then examines Section 178, Comment f., one must conclude that there was an intention to carry promissory estoppel (or call it what you will) into the statute of frauds if the additional fac-

tor of a promise to reduce the contract to writing is present. Williston on Contracts, 1936 Ed., Sec. 533A.

The circumstance of Stephenson's relinquishing his rights with Western and the promise to make a written contract on the future condition, we think, meets the test of the Restatement.

Parenthetically, we observe that California courts probably would reach the same result. Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88. True it is that under earlier decisions where one gave up job A to take job B on an oral promise of long time employment on job B, no exception to the statute of frauds was made. But we believe with the growth of tenure rights and fringe benefits on a given job, the pendulum has swung the other way and that Seymour v. Oelrichs, supra, will generally be followed throughout the country.[4]

Further, it occurs to us that the Restatement of Contracts, Section 178, Comment f., has come up with a very good compromise in the confusion of decisions under the statute of frauds which leaves some vitality to the statute, yet gives a workable rule in making exceptions.

But when New York, knowing full well what Florida law is, nevertheless to vindicate New York's own laws ignores Florida law, we think we commit no sin to follow the Restatement of Contracts when we cannot be sure whether New York law is purely procedural or is both fundamental and procedural.

In reaching a conclusion as to the nature of the statute (and we here adopt on this point the Restatement of Contracts), we have given some slight weight to the center of gravity theory in conflict of laws. See 56 Yale L.J. 1155. This we would hesitate to do if it were clearly and unequivocally shown that the New York statute of frauds was one going to the initial validity of a contract made in New York.

4. See Fibreboard Products, Inc., v. Townsend, 9 Cir., 202 F.2d 180, following

Monarco v. Lo Greco, 35 Cal.2d 621, 220 P.2d 737.

■ We do not deem it necessary to proclaim the Alaska statute of frauds one of substance or of procedure. However, we are not impressed with the argument that it must be considered as one of procedure simply because it is found in the procedural sections of the Alaska code. We would think that in a purely Alaskan situation without old Alaska precedents a desire for uniformity among states would indicate that we follow the Restatement of the Law of Contracts, and if Alaska contracts end up in other jurisdictions we should hope that the forum will apply the Restatement. The foregoing expressions, we recognize, would have little basis for suggesting to any other court what it should do unless we hold that the Alaska statute is one of substance. We think substance is the better rule.

■ We recognize that if we hold the New York statute procedural and the Alaska statute substantive, then it is logical to argue that therefore no statute of frauds is applicable to a New York contract sued upon in the Territory of Alaska. We cannot go that far. We think that we should hold that if the lex loci contractus is procedural and the law of the Territory of Alaska is primarily substantive, the fundamental public policy of the territory should require that no contract invalid under the Alaska statute of frauds, if made in Alaska, escapes invalidity under the statute of frauds just because it is made outside of Alaska.[5] (If the Alaska statute is procedural, then certainly whatever interpretation we give the Alaska statute is applicable to the Stephenson contract.) Here, following the Restatement of Contracts as we have applied it, and depending on how one looks at it, the contract is not within the Alaska statute, or it is within Alaska's statute but subject to a recognized exception of the Restatement of Contracts.

A contention arises that it was stipulated (or there was expressed or implied consent) that New York law is applicable. We think the record does not sustain that contention.

■ Defendant complains that the record shows plaintiff failed to mitigate his damages. Of course, the plaintiff did have a duty to mitigate his damage, and his excuses for failing to seek other employment are rather flimsy. But we take it, on the issue of failure to mitigate damages, the burden of proof rested upon the defendant. After carefully considering the evidence on the subject we think that a jury question was presented as to whether plaintiff should be charged with failure to mitigate.

Alaska, Inc., also complains that it was clearly entitled to an offset or to deduct from the plaintiff's claim for wages admittedly due by Alaska, Inc., payments made by plaintiff on a purchase contract for a house in Anchorage, Alaska. The contract provided that in the event Stephenson did not complete the purchase of the house the payments should be considered as rent. We have considered the evidence which appellee argues entitled the question of reimbursement for home payments to go to the jury. We think plaintiff's evidence on this point was little more than that it was his opinion he was entitled to be repaid for the installments paid on his real estate contract. And for all that the record shows, Stephenson's equity in the place may have increased beyond the amount he paid. These payments being $2,000, the verdict on the second cause of action should be reduced in that amount.

The judgment on plaintiff's first claim in the amount of $11,050 is affirmed. The judgment for $2,695.20 on the second claim is to be modified by the trial court's reducing it to the extent of $2,000 to $695.20.

5. Section 602, Restatement of Conflicts, is as follows:

"Formal Requirements.

"If the law of the forum forbids action unless certain forms have been employed, no action can be maintained on a foreign cause of action without satisfying such requirements of form."

Each party should pay his own costs on appeal, except that the appellee should be charged with half of the cost of the reporter's transcript of evidence and half of the cost of the printed record.

As directed to be modified, the judgment is affirmed.

LEMMON, J., did not participate in the decision of this case.