Nicholas **KAZAN**, Petitioner,

v.

**DOUGH BOYS, INC.,** Respondent.

No. S–12830.

Supreme Court of Alaska.

Feb. 20, 2009.

Rehearing Denied April 7, 2009.

---

Brewster H. Jamieson and Joshua M. Kindred, Lane Powell LLC, Anchorage, for Petitioner.

Roy Longacre, Longacre Law Offices, Ltd., Anchorage, for Respondent.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

This appeal arises from a claim based on the filing of a financing statement with an overly broad description of the property subject to a lien under Revised Article 9 of the Uniform Commercial Code. A single over-arching question is presented: Is it error as a matter of law to rescind a settlement agreement with respect to one party and not the other? In the proceedings below, the trial court awarded Dough Boys, Inc. $60,000 in damages after holding that Nicholas Kazan used his overbroad financing statement to "leverage" a $60,000 settlement payment as part of the sale of a business owned by Dough Boys. The superior court affirmed and we granted Kazan's petition for hearing. Because we conclude that it was error to not enforce the parties' settlement agreement in its entirety and that Dough Boys was not harmed by Kazan's overbroad financing statement, we reverse the $60,000 award to Dough Boys.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 2002 Nicholas Kazan sold two business, Europa Bakery and Caf Europa, to Dough Boys, Inc. in two separate transactions. When Dough Boys purchased Caf Europa in the second transaction, it gave Kazan a promissory note for part of the purchase price. The parties also entered into a security agreement that secured the promissory note and all amounts Dough Boys might owe Kazan in the future under the parties' sale agreement for Caf Europa. Both the Caf Europa sale agreement and the security agreement authorized Kazan to file a financing statement covering the assets of Caf Europa. Dough Boys paid the $125,000 balance on the note in full and on time at the end of 2002.

It is undisputed, and the trial court found, that the financing statement's description of Dough Boys' property subject to Kazan's lien was overly broad because it covered all of

Dough Boys' property.[1] The parties' sale agreement for Caf Europa authorized Kazan "to execute and record ... an initial financing statement covering equipment, inventory, fixtures, accounts receivable, general intangibles and proceeds thereof arising from any business operation owned by [Dough Boys] and operated under the name of Caf Europa." Similarly, the parties' security agreement, which authorized Kazan to file a financing statement, limited the collateral to the assets of Caf Europa. The financing statement filed by Kazan, however, did not limit the property to that of Caf Europa but instead covered Dough Boys' "equipment[,] inventory, fixtures, accounts receivable, general intangibles, trademarks, customer lists, booked orders, attachments and accessions, leasehold interest, products and proceeds."

In 2005 Dough Boys sold both Europa Bakery and Caf Europa to Sagaya Corporation, again in two separate transactions. Sagaya and Dough Boys signed a purchase agreement for Europa Bakery in January 2005, and a month later, they signed a purchase agreement for Caf Europa.

Before the purchase agreement for Caf Europa was signed, an attorney representing Dough Boys sent a letter requesting that Kazan amend the financing statement to cover only assets of Caf Europa.[2] Kazan responded in a letter that "[u]ntil my extended claims against the Dough Boys are resolved, I am not inclined to release my security interest in the assets of Dough Boys, Inc."

Sagaya's owner, Paul Reid, testified that the "lien ... was inhibiting [Dough Boys and Sagaya] from closing on the purchase of [Europa Bakery and Caf Europa]." Reid also noted that he acted as a "closer on the deal" by "go[ing] back and forth to both [Dough Boys and Kazan]." These negotiations led to related agreements.

Dough Boys signed a sale agreement for Caf Europa with Sagaya. That sale agreement provided that Sagaya would pay Kazan $60,000 in return for certain releases of claims by Kazan:

> At the Closing, [Sagaya] shall pay in cash or in cash over a scheduled term to Nicholas Kazan, who has a claim against [Dough Boys] and who holds a security interest in certain assets of the Caf, the sum of $60,000. [Sagaya] will obtain a release or releases from Kazan ... for the benefit of [Dough Boys] and [Sagaya] and the assets of the Caf.

Kazan executed and delivered to Sagaya a settlement and release agreement under which Kazan discharged all of his claims against Dough Boys. Kazan also entered into a mutual release of all claims with Sagaya under which both discharged their present and future claims against each other. Although Kazan's settlement and release agreement in favor of Dough Boys did not mention the $60,000 payment and was not executed by Dough Boys, Reid testified that the sale agreement between Sagaya and Dough Boys expressed the understanding that Kazan would receive $60,000 in consideration for the settlement and release agreement in favor of Dough Boys.

### B. Proceedings

In March 2005 Gheorghe Cozac filed a small claims action against Dough Boys for

---

1. The parties and courts below at times refer to Kazan's "overbroad lien," but this phrase is misleading. Kazan filed a financing statement containing an overly broad description of the collateral covered by his security interest in Dough Boys' property. This did not create an overbroad lien. A lien is "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied," and generally "the creditor does not take possession of the property on which the lien has been obtained." BLACK'S LAW DICTIONARY 941 (8th ed.2004). As other courts have noted, including an overbroad description of collateral covered by a security interest in a financing statement does not enlarge the scope of a creditor's security interest, or lien, in the debtor's

property. *E.g., In re Amex–Protein Dev. Corp.,* 504 F.2d 1056, 1061 (9th Cir.1974). Thus, the more accurate description is "overbroad financing statement," which we use throughout this decision unless specifically referring to the arguments or reasoning of the parties or the courts below.

2. Although the letter requested that Kazan amend the collateral description in the security agreement, it appears that the letter intended to refer to the financing statement because the letter said that the description in the financing statement, and not the security agreement, was too broad.

payment for work he performed for Europa Bakery and Caf Europa when Kazan was the owner. In its answer to Cozac's complaint, Dough Boys filed a third-party complaint against Kazan, seeking damages arising from Dough Boys' purchase of Caf Europa from Kazan and from its agreement to manage Kazan's coffee shop. Dough Boys further alleged that Kazan breached the covenant of good faith and fair dealing by treating Dough Boys unfairly and breached their settlement and release agreement by failing to indemnify Dough Boys for Cozac's claims. In response, Kazan brought counterclaims against Dough Boys concerning money owed by Kazan to the IRS and other creditors, the management of Kazan's coffee shop by Dough Boys, and Dough Boys' alleged breach of its indemnity agreement with Kazan.

In the district court's summary judgment order, Judge John R. Lohff dismissed Kazan's counterclaims and "release[d] any lien against Europa Bakery Wholesale assets," [3] leaving "appropriate damages to be determined [at trial]." The trial court found that "good cause" existed for granting Dough Boys' motion, but it did not discuss the grounds for its decision. In Dough Boys' motion for summary judgment, it argued that Kazan's counterclaims should be dismissed because Kazan released all his claims against Dough Boys in his settlement and release agreement with Dough Boys. Dough Boys also argued that Kazan refused to correct his overbroad financing statement and that Kazan held the financing statement "hostage to extract" $60,000 from its sale of Caf Europa.

At a two-day bench trial in May 2006, Dough Boys sought damages for the $60,000 paid to Kazan when Sagaya bought Caf Europa. Dough Boys did not pursue any of the other claims alleged in its third-party complaint against Kazan. Kazan represented himself at trial.

In its decision, the trial judge denied Cozac's claim against Dough Boys, finding that it was not supported by sufficient evidence. It also awarded Dough Boys $60,000, plus interest, costs, and fees, against Kazan on the basis that "Dough Boys was damaged by Kazan's demand for the payment required to obtain the release of the lien." The trial court reasoned:

> If Kazan had not filed an overly broad description of the property subject to the UCC lien, he would not have been paid the $60,000. This court is left with the firm conviction that Kazan had no basis for the $60,000 payment. The claims Kazan had or thought he had over the nonpayment of the employee withholding tax to [the] IRS, and the dispute over the management of the Made in the Shade Coffee shop did not entitle Kazan to the lien he had filed against the Dough Boys property. He should have released the UCC lien when requested to do so by Dough Boys.[4]

In its written findings of fact and conclusions of law, the trial court also concluded that Kazan had used his "lien" to leverage the $60,000 payment at Dough Boys' expense. The district court found that Kazan's claims arose from his difficulty with the IRS over an unpaid employee withholding from the last quarter that he owned Caf Europa and from another agreement between the parties, where Kazan hired Dough Boys to manage a coffee shop owned by Kazan. The trial court attributed the breakdown of the parties' management agreement to Kazan's failure to disclose numerous unpaid bills to Dough Boys when it began managing the coffee

---

3. Kazan, however, never had a lien on any of Dough Boys' Europa Bakery assets. The parties' security agreement, which authorized Kazan to file a financing statement, limited Kazan's security interest in Dough Boys' assets to "all assets of Caf Europa." As other courts have explained, even though Kazan filed a financing statement that described the property covered by his security interest as all of Dough Boys' assets, the financing statement did not expand the property covered by his security agreement to all of Dough Boys' assets. See, e.g., Amex–Protein, 504 F.2d at 1061 (explaining that a financing statement cannot enlarge the property covered by the security agreement). Kazan's security interest was in Dough Boys' Caf Europa assets only. See 79 C.J.S. Secured Transactions § 99 (2008) (noting that the security agreement defines the extent of the security interest).

4. Contrary to the trial court's assertion that Kazan should have released the lien when asked to do so, Dough Boys did not ask Kazan to release his lien. Dough Boys asked Kazan to amend his financing statement's description of the collateral covered by his lien.

shop. According to the district court, "[t]hese disputes remained unresolved until Dough Boys sold Europa Bakery and Caf Europa in 2005."

Kazan appealed the district court's damages award to Superior Court Judge Michael R. Spaan, who affirmed, reasoning that the trial court did not err in concluding that the parties' settlement and release agreement prevented Kazan from bringing his claims against Dough Boys, that Kazan's "lien" was overbroad, and that Kazan "extracted the $60,000 payment from Sagaya because of his overbroad lien." We granted Kazan's petition for hearing.

## III. STANDARD OF REVIEW

 We review questions of law and the trial court's application of the law to facts de novo,[5] adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[6] We review factual findings under the clearly erroneous standard[7] and in the light most favorable to Dough Boys, the prevailing party below.[8] "A finding of fact is clearly erroneous if it leaves the court with a definite and firm conviction on the entire record that a mistake has been made."[9]

## IV. DISCUSSION

### A. The Trial Court's Failure To Enforce the Parties' Settlement Agreement in Its Entirety Was Error.

Kazan argues that the district court erroneously enforced only one-half of the parties'

settlement agreement under which Kazan released his lien and his disputed claims against Dough Boys[10] in exchange for $60,000 to be paid by Sagaya when it purchased Caf Europa from Dough Boys. According to Kazan, the trial court enforced the agreement against him by dismissing his claims against Dough Boys based on the release he had executed as part of the settlement. But the trial court set aside the settlement agreement as it bound Dough Boys by awarding it the $60,000 that Kazan received under the settlement. In other words, Kazan argues that the trial court effectively rescinded the part of the parties' agreement benefiting Kazan but not the portion benefiting Dough Boys. We agree.

 The settlement agreement between Kazan and Dough Boys is a binding contract because Kazan released claims that were disputed in good faith in exchange for the $60,000 payment. In *Wyatt v. Wyatt*, we recognized that a settlement agreement forms a binding contract when the agreement satisfies the four elements of contract formation: "an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."[11] Even though we generally do not examine the adequacy of the consideration agreed upon by the contracting parties and instead leave the bargaining to them,[12] we have noted that one form of adequate consideration is the release of a claim that is dis-

5. *Maddox v. Hardy*, 187 P.3d 486, 491 (Alaska 2008).

6. *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

7. *Id.*

8. *See N. Pac. Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 579 (Alaska 2005) ("In reviewing factual findings, we view the evidence in the light most favorable to the prevailing party below." (internal quotation marks omitted)).

9. *Id.* (internal quotation marks omitted).

10. Dough Boys appears to describe this release as unilateral to argue that the release did not

reciprocally state that Dough Boys released all its claims against Kazan, which would support the trial court's finding that the release barred Kazan from bringing his claims against Dough Boys while the release did not bar Dough Boys from bringing its claims against Kazan. Kazan, however, does not argue that the release bars Dough Boys from bringing its claim against Kazan concerning Dough Boys' alleged harm from Kazan's overbroad lien; Kazan argues that if the trial court enforces the parties' settlement agreement, it cannot both bar Kazan from bringing his disputed claims and award Dough Boys the consideration it gave for the release.

11. 65 P.3d 825, 828 (Alaska 2003) (quoting *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997)).

12. *Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1142 (Alaska 1996).

puted in good faith.[13] And the record supports Kazan's contention that his claims were disputed in good faith, despite the trial court's holding that Kazan's claims had "no basis."

In his response to Dough Boys' request that Kazan amend and narrow the description of property in his financing statement, Kazan noted that he had "a number of unresolved claims against the Dough Boys, Inc.," and that until these claims were resolved, he was "not inclined to release [his] security interest in the assets of Dough Boys, Inc." Under the terms of the parties' security agreement, Kazan's lien secured Dough Boys' $125,000 promissory note to Kazan for a portion of the sale price of Caf Europa as well as "[a]ll amounts [Dough Boys] may in the future owe to [Kazan] pursuant to the [Caf Europa] Purchase and Sale Agreement, any promissory note, and any extension or renewal thereof, whether agreed to now or in the future, or which [Kazan] may otherwise pay, advance, or loan to [Dough Boys]...."

Todd Harris, a principal of Dough Boys, testified that Dough Boys paid the $125,000 balance on the note on time and in full on December 30, 2002. Dough Boys contends that Kazan's lien was no longer valid after this payment was made. But Dough Boys fails to acknowledge that the lien also secured any amounts that Dough Boys owed to Kazan under its contractual obligations in the parties' Caf Europa sales agreement. These obligations included Dough Boys' assumption of all of Kazan's liabilities for Caf Europa as of July 1, 2002, as well as Dough Boys' completion of accounting work to close the books of Kazan doing business as Europa Bakery and Caf Europa in 2001 and 2002. Kazan also alleged that Dough Boys failed to protect and indemnify him from claims of the IRS and other creditors of Caf Europa as agreed upon under the parties' sale agree-

ment for Caf Europa. But the parties never had an opportunity to flesh out the merits of Kazan's claims because the trial court dismissed all of Kazan's claims against Dough Boys in its summary judgment order. Although the district court did not discuss the grounds for its decision, Dough Boys' argument in favor of summary judgment was based on Kazan's release, which was signed as part of his settlement with Dough Boys.

Given that the parties had a binding settlement agreement, the trial court's conclusions of law were legally erroneous. In light of the district court's summary judgment order dismissing all of Kazan's claims against Dough Boys based on the settlement and Kazan's release agreement, it was legal error to award Dough Boys $60,000 in damages. During the trial, Kazan repeatedly referred to the claims against Dough Boys that he had released in exchange for $60,000. But Kazan was precluded from presenting any evidence about those claims because the trial court had ruled that the release Kazan gave in connection with the settlement barred him from doing so. Yet the trial court awarded Dough Boys the $60,000 that Kazan received in consideration for releasing his disputed claims against Dough Boys.

A number of policy reasons support enforcement of settlement agreements. Citing "the basic tenet that competent parties are free to make contracts and that they should be bound by their agreement," we have observed that "[a]s a matter of judicial policy the court should maintain and enforce contracts, rather than enable parties to escape from the obligations they have chosen to incur."[14] Accordingly, we leave the negotiating to the parties and do not ordinarily question the adequacy of the consideration that they exchanged for their promises.[15] Policy also favors enforcing settlements and stipulations between parties.[16] We encour-

---

13. *See Air Van Lines, Inc. v. Buster,* 673 P.2d 774, 777 (Alaska 1983) (citing RESTATEMENT (SECOND) OF CONTRACTS § 74, at 281 (1981)) ("In our view the requirement of adequate consideration is satisfied if Keystone disputed AVL's claim for overtime in good faith.").

14. *Inman v. Clyde Hall Drilling Co.,* 369 P.2d 498, 500 (Alaska 1962).

15. *Reeves,* 926 P.2d at 1142.

16. *See DeSalvo v. Bryant,* 42 P.3d 525, 528 (Alaska 2002) ("Generally, sound judicial policy indicates that private settlements and stipulations between the parties are to be favored and should not be lightly set aside." (internal quotation marks and alteration omitted)).

age and favor settlements between parties because they reduce demand for judicial resources.[17]

■ Nonetheless, we have "recognize[d] that 'freedom of contract' is a qualified and not an absolute right, and cannot be applied on a strict, doctrinal basis. An established principle is that a court will not permit itself to be used as an instrument of inequity and injustice."[18] In particular, we have quoted Justice Frankfurter's discussion of the "fundamental principle of law that the courts will not enforce a bargain where one party has unconscionably taken advantage of the necessities and distress of the other."[19]

■ The trial court found that "Kazan used his lien ... to leverage a payment of $60,000 from Dough Boys as a part of the sale of Caf Europa and Europa Bakery [to Sagaya]." According to Sagaya's owner, the "lien ... was inhibiting [Dough Boys and Sagaya] from closing on the purchase of [Europa Bakery and Caf Europa]." But we have recognized that " 'economic necessity—very often the primary motivation for compromise—is not enough, by itself, to void an otherwise valid release.' "[20] And Dough Boys never raised, argued, or presented evidence of any unconscionable activity, nor did it allege fraud or economic duress. In the absence of evidence that the settlement agreement between Kazan and Dough Boys was unconscionable or of any other basis for invalidating the settlement, the parties' set-

tlement agreement should have been enforced in its entirety by the trial court.[21]

## B. The Overbroad Financing Statement Did Not Cause Dough Boys To Suffer Any Damages.

■ Aside from seeking a refund of its payments under the settlement agreement, Dough Boys does not allege that it suffered any additional damages as a result of Kazan's overbroad financing statement. Dough Boys notes that "[t]he financing statement filed by Kazan improperly covered all assets of Dough Boys, not just the Europa Caf assets." But Kazan does not dispute that the financing statement was overbroad. Instead, Kazan argues that Dough Boys was not harmed by the overbroad financing statement. And Dough Boys failed to present any evidence that the overbroad financing statement caused it harm, perhaps because the financing statement's overly broad description of Dough Boys' property subject to Kazan's lien did not affect the extent of Kazan's security interest in Dough Boys' property.

■ Kazan's lien on Dough Boys' property was limited to its Caf Europa assets because a financing statement cannot enlarge the property covered by the security agreement. As other courts have explained, the purpose of filing a financing statement is to give notice to third parties that the filing party may have a security interest in the

17. See *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104, 106 (Alaska 1977) ("Stipulations and settlements are favored in law because they simplify, shorten and settle litigation without taking up valuable court resources."); see also *Worland v. Worland*, 193 P.3d 735, 740 (Alaska 2008).

18. *Inman*, 369 P.2d at 500 (footnotes omitted).

19. *Id.* (quoting *United States v. Bethlehem Steel Corp.*, 315 U.S. 289, 327–28, 62 S.Ct. 581, 86 L.Ed. 855 (1942) (Frankfurter, J., dissenting)).

20. *Hawken Nw., Inc. v. State, Dep't of Admin.*, 76 P.3d 371, 380 (Alaska 2003) (quoting *Zeilinger v. SOHIO Alaska Petroleum Co.*, 823 P.2d 653, 658 (Alaska 1992)).

21. The failure to enforce the settlement agreement in its entirety had the effect of rescinding half of the agreement. We have explained that

rescission is an equitable remedy used by courts to unmake a contract induced by mistake, fraud, or duress. *Watega v. Watega*, 143 P.3d 658, 666 (Alaska 2006). When a court rescinds a contract, it restores to the extent possible the parties to the positions they were in before they entered into the contract. *Id.* The remedy of rescission is not applicable to this case. Dough Boys neither argued or presented evidence supporting a claim of economic duress. Nor did Dough Boys claim that it was induced to enter into the settlement agreement by mistake or fraud. Moreover, the parties cannot be put back into the position they were in before they entered into the settlement agreement. Kazan could pay Dough Boys $60,000 and his claims against Dough Boys could be reinstated, but his security interest in Dough Boys' Caf Europa cannot be reinstated because Dough Boys no longer owns Caf Europa.

named debtor's property.[22] The extent of a party's security interest in another's property is determined by the description of the collateral in the security agreement between them.[23] If there is a conflict between the language used in the security agreement and the financing statement to describe the property covered by the security interest, the security agreement generally prevails because the security agreement, not the financing statement, defines the extent of the secured party's interest.[24] A financing statement cannot enlarge the property covered by the security agreement, but it may restrict the property covered by the security agreement.[25]

The security agreement between Kazan and Dough Boys granted Kazan a security interest in all of Dough Boys' Caf Europa assets and authorized Kazan to file a financing statement that covered those assets. As a result, Kazan had a security interest in Dough Boys' Caf Europa assets. When Kazan filed a financing statement that covered all of Dough Boys' assets, his security interest in Dough Boys' property did not expand. Kazan merely filed an overbroad financing statement, and Dough Boys had the statutory right to request that it be corrected.[26] After Dough Boys asked Kazan to amend the financing statement, the parties negotiated a settlement agreement under which Kazan released all of his claims against Dough Boys, including his lien on Dough Boys' Caf Europa assets, which rendered the issue of the overbroad financing statement moot.[27] Because Dough Boys failed to prove any damages arising out of the overbroad financing statement aside from its role in motivating Dough Boys to settle its claims with Kazan, it was error to award damages to Dough Boys.

## V. CONCLUSION

Because the parties' settlement agreement is a binding contract and there is no justification for rescinding it, and because Dough Boys did not suffer any damages from Kazan's overbroad financing statement, we REVERSE the $60,000 damage award to Dough Boys.

CARPENETI, Justice, not participating.

**22.** *See, e.g., In re Northview Corp.,* 130 B.R. 543, 547 (B.A.P. 9th Cir.1991) (quoting *In re Softalk Publ'g Co., Inc.,* 856 F.2d 1328, 1330 (9th Cir. 1988)).

**23.** *In re Bakersfield Westar Ambulance, Inc.,* 123 F.3d 1243, 1248 (9th Cir.1997).

**24.** 79 C.J.S. *Secured Transactions* § 99 (2008).

**25.** *E.g., In re Amex–Protein Dev. Corp.,* 504 F.2d 1056, 1061 (9th Cir.1974).

**26.** *See generally* AS 45.29.210, .625(g) (providing the types of requests that debtors may make of secured parties and the remedy if the secured parties fail to comply with the requests).

**27.** Because the financing statement's overbreadth is no longer an issue, we decline to discuss Kazan's argument that the statutory procedures provide the exclusive remedy for an overbroad financing statement.