*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LEONA SEAL, Personal Representative of the Estate of NICHOLSON J. TINKER,<br><br>　　　　　　　Appellant,<br><br>　v.<br><br>MARK C. WELTY, d/b/a NORTH COUNTRY SERVICES,<br><br>　　　　　　　Appellee. | Supreme Court No. S-17540<br><br>Superior Court No. 3AN-17-10122 CI<br><br>O P I N I O N<br><br>No. 7494 – December 18, 2020 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: David Murrills, Schlehofer Law Offices, P.C., Anchorage, for Appellant. Susan Orlansky, Reeves Amodio LLC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

WINFREE, Justice.

## I.   INTRODUCTION

A worker died at a construction site when a retaining wall collapsed. Neither the putative employer, who claimed the worker was an independent contractor, nor the property owner, who hired the putative employer, had workers' compensation

coverage. The worker's mother, who also was the personal representative of the worker's estate, filed both a workers' compensation claim against the Alaska Workers' Compensation Benefits Guaranty Fund and a superior court wrongful death action against both the putative employer and the property owner. The Fund later caused the property owner, the putative employer, and the worker's father to be joined as parties to the workers' compensation claim before the Alaska Workers' Compensation Board.

All parties to the workers' compensation proceeding, except the putative employer, entered into a settlement agreement; in the settlement the estate elected the wrongful death suit as its remedy, agreed to dismiss the workers' compensation claim entirely to effectuate its remedy election, received a settlement payment from the property owner's general liability insurer, and dismissed the wrongful death claim against the property owner. The agreement explicitly preserved the estate's wrongful death claim against the putative employer. The Board evidently approved the agreement, and the superior court dismissed the property owner from the wrongful death action based on a separate stipulation.

The putative employer then sought dismissal of the wrongful death suit, contending that the Alaska Workers' Compensation Act's exclusive liability provision precluded the lawsuit because the settlement effectively paid workers' compensation benefits to the estate. The superior court granted the putative employer summary judgment, relying on the Act to decide that the Board's approval of the settlement transformed the settlement money into workers' compensation benefits. Because the superior court misinterpreted the settlement agreement and the Act, we reverse the grant of summary judgment and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS[1]

David Michaelson contracted with Mark Welty, d/b/a North Country Services, to demolish and rebuild a retaining wall at Michaelson's 4-unit rental property. Nicholson Tinker worked for Welty at the construction site. In September 2016 the retaining wall collapsed, killing Tinker.

Welty had no workers' compensation insurance; he had a general commercial liability insurance policy, but the insurer denied coverage for the accident. Michaelson had no workers' compensation insurance, but he had a landlord liability policy through Allstate with a $300,000 policy limit.

Tinker was unmarried and had no children. He shared an apartment and some living expenses with his mother, Leona Seal, who was appointed personal representative of Tinker's estate. Seal filed, in her own name, a written workers' compensation claim for death benefits in late 2016. She included a claim against the Fund and informed the Board that she was "pursuing employers / project owners directly for personal injury . . . but reservin[g] rights so also making guaranty fund claim." As personal representative of Tinker's estate, Seal also filed a wrongful death action against both Welty and Michaelson in late 2017. Welty answered and denied he was Tinker's employer; Welty has consistently maintained that Tinker was an independent contractor.

The Fund petitioned to join Welty, Michaelson, and Tinker's father to the Board proceeding. Welty opposed joinder; Michaelson did not oppose joinder but contended that Seal could not proceed with both the compensation claim and the civil

---

    [1]    Some facts related to the Board proceeding are derived from the settlement agreement, which is part of the appellate record in this case.

case.[2] The Board joined all three parties in August 2018, but "with the agreement of the parties" did not schedule hearings because Seal wanted to pursue the civil action.

In August 2018 Michaelson offered to settle the wrongful death claim against him with the full amount of the available Allstate insurance funds in exchange for a release of all claims made against him in both the superior court and Board proceedings. Michaelson informed Seal that the Fund would "need to agree" to the settlement and that, although the estate could "continue its third party action against . . . Welty," the estate could not further pursue the workers' compensation claim because doing so would expose Michaelson to additional liability.[3]

The parties initially planned to use two documents to memorialize the agreement. Michaelson drafted a release stating that the settlement agreement represented "an election pursuant to AS 23.30.055 to maintain a civil action against Mark Welty d/b/a North Country Services and David Michaelson." Under the release's terms

---

[2] Alaska Statute 23.30.055 sets out what is referred to as an election of remedies; it provides, in relevant part:

> [I]f an employer fails to secure payment of compensation as required by [the Act], an injured employee or the employee's legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the employer at law . . . for damages on account of the injury or death. In that action, the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of the employment, or that the injury was due to the contributory negligence of the employee.

[3] Under AS 23.30.045(a) Michaelson could be liable for workers' compensation as a project owner if Welty were determined to be Tinker's employer. A project owner is "a person who, in the course of the person's business, engages the services of a contractor and who enjoys the beneficial use of the work." AS 23.30.045(f)(2).

Seal and the estate "waive[d] any rights to workers' compensation benefits," and Seal was to notify the Fund that the workers' compensation claims were being withdrawn, with prejudice, against both Michaelson and Welty. Michaelson required an agreement between Seal and the Fund "dismiss[ing] all potential claims forever against [Michaelson and Welty] filed contemporaneously with the . . . [B]oard" before paying the estate.

The Fund requested that the settlement be filed with the Board and ultimately drafted the settlement agreement as one document. Because the Board had joined Tinker's father, who was self-represented, the Board had to approve any workers' compensation claim settlement.[4] The parties do not dispute that the Board approved the settlement, although the superior court record does not contain a copy signed by the Board.

In late November 2018 Michaelson and Seal stipulated to dismiss the estate's claims against Michaelson in the wrongful death suit; the stipulation included, in bold typeface, a sentence stating that the estate's claims against Welty were not dismissed. The superior court signed the accompanying order dismissing claims against Michaelson in December 2018. Welty then sought summary judgment, asking the court to dismiss the estate's claims against him based on the settlement agreement. Welty's only exhibits were: (1) the settlement agreement without the Board's endorsement; (2) the Board's decision in *Shepard v. New City Painting, LLC*;[5] and (3) an Alaska

---

[4]    *See* AS 23.30.012(b) (requiring Board review and approval of settlement when claimant is not represented by Alaska attorney). If all parties are represented by Alaska counsel, a settlement is exempt under AS 23.30.012(a) from the requirement for Board review and approval; such a settlement agreement "is enforceable as a compensation order" after it is filed with the Division of Workers' Compensation.

[5]    AWCB Dec. No. 13-0001 (Jan. 10, 2013) (holding that injured employee unable to collect on civil judgment against uninsured employer was not barred under
(continued...)

Workers' Compensation Appeals Commission decision reversing the Board's *Shepard* decision.[6]

Welty asserted that under AS 23.30.055, Seal was "required to elect a remedy"[7] and "[a]s a matter of undisputed fact, . . . has elected workers' compensation benefits." He contended that Seal had "claimed compensation" by entering into the settlement agreement and filing it with the Board for approval. Alleging that the settlement money "came from Allstate," Michaelson's insurer, "through the Alaska Workers' Compensation Benefits Guaranty Fund," Welty argued that the Board's approval under AS 23.30.012 effectively made the settlement a final judgment of the Board and showed that Seal had elected compensation. Relying on the Commission's *Shepard* decision, Welty contended that Seal had "obtained a final decision in the workers' compensation proceeding," precluding her from continuing the civil case against him.

Seal filed a lengthy opposition with multiple exhibits. She disputed some "facts" in Welty's motion; she pointed out, for example, that Welty's assertion about the settlement money coming through the Fund was incorrect and that his purported citation was "flat out wrong." She disputed Welty's arguments about the settlement agreement's

---

[5] (...continued) AS 23.30.055 or AS 23.30.105 from filing a workers' compensation claim).

[6] *State, Workers' Comp. Benefits Guar. Fund v. Shepard*, AWCAC Dec. No. 190 (Dec. 20, 2013), http://labor.state.ak.us/WCcomm/memos-finals/D_190.pdf (reversing Board's decision and holding workers' compensation claim barred under AS 23.30.055).

[7] *See* AS 23.30.055 (providing when employer is uninsured employee "may elect to claim compensation . . . or to maintain an action against the employer at law").

meaning and effect, noting that settlement agreements are interpreted "using basic contract principles."

Seal argued that the estate did not elect a compensation remedy against Welty, maintaining that she had filed the workers' compensation claim against the Fund as a direct beneficiary rather than as the estate's representative and pointing out that she believed the Fund improperly sought the other parties' joinder. She relied on the settlement agreement's language to support her argument that she had settled with Michaelson in the civil case, not the workers' compensation case. She contended that if the settlement before the Board represented an election of remedies under AS 23.30.055, the Board had sanctioned her choice of the civil suit by granting approval. The settlement said explicitly that "by entering into [the] Agreement . . . [she] ha[d] . . . made an election of remedies under AS 23.30.055 to pursue a civil action against Welty and Michaelson." Seal contended that as a matter of law AS 23.30.055 did not foreclose her suit because "no [workers' compensation] benefits have been paid" and the civil suit had "not been resolved by a judgment." She ended by asserting that Welty's motion was "both factually and legally flawed" and noting that Welty was not even a party to the settlement agreement filed with the Board.

In reply Welty insisted that Seal had "received hundreds of thousands of dollars of benefits through the workers' compensation process," resulting in a final Board order. Welty argued: "By receiving benefits, she pursued her workers' compensation claims to a successful conclusion." Welty acknowledged that the settlement agreement preserved Seal's rights to pursue a civil action but said that the parties to the settlement — presumably including the Fund — could "not evade the law, as they attempt to do here, by crafting a Settlement Agreement that provides on the one hand that a workers' compensation claimant receives benefits approved by the [B]oard . . . but at the same time continue to maintain [a civil] action." According to Welty,

Seal's contention that the settlement payment did not represent workers' compensation benefits was "mistaken." Welty argued that it was immaterial that Allstate, rather than a workers' compensation insurance carrier, was the settlement money's source.

The superior court granted summary judgment to Welty. The court decided there were no material factual disputes and determined first that the plaintiff in the civil action and the claimant in the workers' compensation case were the same. The court then decided that the settlement proceeds "constitute workers' compensation benefits because the proceeds were derived from a workers' compensation settlement agreement approved by the Board" under AS 23.30.012. The court reasoned that because the agreement was "equivalent to an order of the Board" after the Board approved it, "the settlement proceeds are equivalent to a workers' compensation award" and therefore "compensation" as a matter of law. According to the court, "the source of the proceeds ha[d] no bearing on [the] outcome"; "[t]he only material fact is that the Board approved the Settlement Agreement." The court said that under any interpretation of the election of remedies issue, Seal had elected workers' compensation as her remedy; the court concluded that allowing the negligence action to proceed would "contravene[] the intent of the statute requiring an election." Addressing Seal's argument about applying contract interpretation principles, the court acknowledged the settlement agreement's express language but decided that "self-serving contract language" served to "contravene the legal effects of [the Act] under the undisputed facts." The court entered final judgment against Seal. Seal, as personal representative of Tinker's estate, appeals.

## III. STANDARD OF REVIEW

We review the grant of summary judgment de novo.[8] "Questions regarding the interpretation and application of a statute are questions of law to which we apply our

---

[8] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

independent judgment."[9]  Contract interpretation generally is a question of law that we review de novo, but interpretation can involve factual questions "when the meaning of contract language is dependent on conflicting extrinsic evidence."[10]

## IV.    DISCUSSION

### A.    Relevant Workers' Compensation Principles

Workers' compensation generally is the exclusive remedy that an "employee, the employee's legal representative, . . . parents, dependents, next of kin, and anyone otherwise entitled to recover damages" has against an employer "on account of [an] injury or death" covered under the Act.[11]  Because the exclusive remedy provision applies to any action "on account of the injury," the claimant's identity does not determine whether the exclusive remedy provision bars suit.  We have, for example, interpreted the phrase "on account of the injury" in AS 23.30.055 as barring a spouse's loss of consortium claim against an employer because her claim resulted from her husband's work-related injury for which he received compensation.[12]  If a death is work related and an employer has compensation coverage, the exclusive remedy provision generally bars the worker's estate's wrongful death claim against the employer.[13]

If an employer is uninsured, AS 23.30.055 permits "an injured employee or the employee's legal representative in case death results from the injury [to] elect to claim compensation under [the Act], or to maintain an action against the employer at law

---

[9]     *State v. Jeffery*, 170 P.3d 226, 229 (Alaska 2007).

[10]    *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1000 n.1 (Alaska 2004).

[11]    AS 23.30.055.

[12]    *Wright v. Action Vending Co.*, 544 P.2d 82, 86 (Alaska 1975).

[13]    *Taylor v. Se.-Harrison W. Corp.*, 694 P.2d 1160, 1161 (Alaska 1985).

. . . for damages on account of the injury or death." An uninsured employer is prohibited by AS 23.30.055 from asserting certain defenses, such as contributory negligence, in a civil suit. But the Act, and therefore AS 23.30.055, applies only if an injury arises out of and in the course of employment.[14]

The Board is an administrative agency with limited jurisdiction prescribed by the Act; it cannot adjudicate civil claims.[15] Parties cannot by stipulation expand an administrative agency's subject matter jurisdiction any more than they could by stipulation expand a court's jurisdiction;[16] the legislature determines an administrative agency's jurisdiction.[17] When resolving disputes about the Act's applicability, we have held that the superior court and the Board have concurrent jurisdiction.[18] Included in

---

[14]     AS 23.30.010.

[15]     *Gunter v. Kathy-O-Estates*, 87 P.3d 65, 69 (Alaska 2004) (describing Board's authority as "limited to the powers and duties prescribed by [the Act]"); *see also Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 36-37 (Alaska 2007) ("Neither the Appeals Commission nor the Board has jurisdiction to hear any action outside of a workers' compensation claim.").

[16]     20 AM. JUR. 2D *Courts* § 90 (2015); *see also Holdsworth v. Greenwood Farmers Coop.*, 835 N.W.2d 30, 55 (Neb. 2013) (holding parties could not "by private agreement" deprive workers' compensation court of jurisdiction), *superseded by statute on other grounds as recognized in Dragon v. Cheesecake Factory*, 915 N.W.2d 418, 422 (Neb. 2018).

[17]     *Alaska State Comm'n for Human Rights v. Anderson*, 426 P.3d 956, 962-63 (Alaska 2018) ("Administrative agencies are created by statute 'and therefore must find within the statute the authority for the exercise of any power they claim.' " (quoting *McDaniel v. Cory*, 631 P.2d 82, 88 (Alaska 1981))).

[18]     *Ehredt v. DeHavilland Aircraft Co. of Canada*, 705 P.2d 446, 450 (Alaska 1985) (citing *Alaska Workmen's Comp. Bd. v. Marsh* (*Marsh I*), 550 P.2d 805, 808 n.8 (Alaska 1976)); *see also Nelson v. Municipality of Anchorage*, 267 P.3d 636, 643-44

(continued...)

disputes about the Act's applicability are disputes related to whether the injured person is an employee or an independent contractor.[19]

Alaska Statute 23.30.012 permits resolving a workers' compensation claim dispute by filing with the Division of Workers' Compensation a settlement agreement meeting certain requirements.[20] When all parties are represented by Alaska attorneys the statute does not mandate Board approval,[21] and the agreement is enforceable as a compensation order.[22] If a party is not represented by an Alaska attorney, and in other specific circumstances, a Board panel must review a proposed settlement agreement.[23] Once the Board reviews and approves a settlement agreement, "the agreement is

---

[18]      (...continued)
(Alaska 2011) (recognizing concurrent superior court and Board jurisdiction about "employee's status at the time of injury"); *Himschoot v. Shanley*, 908 P.2d 1035, 1040 (Alaska 1996) (affirming superior court's jurisdiction to decide whether accident was work related).

[19]      *See, e.g.*, *Odsather v. Richardson*, 96 P.3d 521, 522 (Alaska 2004) (reversing summary judgment and remanding to determine employee or independent contractor status); *see also Searfus v. N. Gas Co.*, 472 P.2d 966, 969 (Alaska 1970) (adopting "relative nature of the work" test to determine employment status). The legislature in 2018 amended the Act to exclude independent contractors from the definition of "employee" and to provide a statutory test for independent contractor status. Ch. 91, § 17, SLA 2018.

[20]      *See also* 8 Alaska Administrative Code (AAC) 45.160 (2011) (setting out necessary provisions in Board settlement).

[21]      AS 23.30.012.

[22]      AS 23.30.012(a).

[23]      AS 23.30.012(b) (requiring review when claimant or beneficiary is not represented by Alaska attorney, beneficiary is minor or incompetent, or claimant waives future medical benefits).

enforceable the same as an order or award of the [B]oard."[24] The statute thus does not always require Board approval for a settlement agreement to be enforceable as a compensation order.

The legislature created the Fund in 2005.[25] An employee may file a claim against the Fund only when an employer "fails to meet the requirements of AS 23.30.075 and . . . fails to pay compensation and benefits due to the employee under [the Act]."[26] Civil penalty payments from uninsured employers and appropriations finance the Fund.[27] Alaska Statute 23.30.082 contemplates that the Fund may have insufficient reserves to pay all claims and provides that "when sufficient money has been deposited . . . and appropriated," the Fund must "satisfy unpaid claims in the order in which the claims were originally filed."[28]

## B. Application Of Relevant Workers' Compensation Principles To This Case

Seal argues that the superior court erred by failing to distinguish her status as personal representative of an estate from her status as a potential workers' compensation beneficiary.[29] She also contends that she never made a workers'

---

[24] *Id.*

[25] Ch. 10, § 31, FSSLA 2005.

[26] AS 23.30.082(c). Under the Act " 'compensation' means the money allowance payable to an employee or the dependents of the employee as provided for in [the Act], and includes the funeral benefits provided for in [the Act]." AS 23.30.395(12).

[27] AS 23.30.082(a).

[28] AS 23.30.082(e).

[29] Seal's assertion that a claim on behalf of a deceased worker can be filed against the Fund only by a dependent is incorrect but immaterial. A deceased worker's
(continued...)

compensation claim against Welty in her capacity either as a possible beneficiary or as personal representative, insisting that her claim was against only the Fund. In her view any election of remedies required under AS 23.30.055 cannot bar her claim because she elected a workers' compensation remedy against the Fund alone, but she elected a civil remedy against Welty and Michaelson. She notes that she "could only have recovered a maximum of $30,000" for workers' compensation benefits[30] but that to settle her wrongful death suit against Michaelson Allstate paid $300,000. She argues that joinder of Welty and Michaelson to the workers' compensation claim "was improper" and does not change the legal analysis in any event. She maintains that the superior court conflated distinct legal entities and roles in making its decision.

Because the exclusive remedy provision is related to claims made "on account of the injury or death,"[31] whether Seal filed the workers' compensation claim as a potential beneficiary or as personal representative of the estate was immaterial to the questions before the superior court.[32] Had Seal or the estate received workers'

---

[29]  (...continued)
estate can claim funeral expenses under AS 23.30.215 as well as any compensation the worker may have been entitled to before death. AS 23.30.195 (allowing award of impairment or disability compensation after death); *see, e.g.*, *Estate of Stark*, AWCB Dec. No. 05-0171 (June 23, 2005) (awarding estate medical and transportation benefits and funeral expenses).

[30]  Death benefits include up to $10,000 in funeral expenses. AS 23.30.215(a)(1). In some circumstances parents of a worker who dies on the job may receive compensation of up to "$20,000 in the aggregate." AS 23.30.215(a)(4).

[31]  AS 23.30.055; *see also Wright v. Action Vending Co.*, 544 P.2d 82, 86 (Alaska 1975) (holding that AS 23.30.055 barred wife's loss of consortium claim for husband's work-related injury).

[32]  *See* AS 23.30.215(a) ("If the injury causes death, the compensation is . . .
(continued...)

compensation benefits, the estate's wrongful death suit would be barred by the exclusive remedy provision.[33]  Seal cites a number of our cases holding that AS 23.30.055 did not bar an employee's injury-related civil action even though an employee received workers' compensation, but those cases are distinguishable.  She did not allege an intentional tort in the civil suit,[34] illegality in Tinker's contract,[35] or a maritime claim against Welty.[36]

It also was immaterial whether Seal's workers' compensation claim was against the Fund or Welty.  The Fund has no independent liability to a compensation claimant.  When an employer fails to provide compensation coverage and "fails to pay compensation and benefits due,"[37] the Act allows a claimant to file a claim against the

---

[32]     (...continued)
payable in the following amounts to or for the benefit of the following persons: (1) reasonable and necessary funeral expenses not exceeding $10,000; . . . (4) if there is no widow or widower or child or children, then for the support of father, [or] mother, . . . if dependent upon the deceased at the time of injury, . . . not to exceed $20,000 in the aggregate . . . .").

[33]     *See Taylor v. Se.-Harrison W. Corp.*, 694 P.2d 1160, 1161 (Alaska 1985).

[34]     *See Elliott v. Brown*, 569 P.2d 1323, 1327 (Alaska 1977) (holding that exclusive remedy provision did not shield co-worker who allegedly committed intentional tort).

[35]     *See Whitney-Fidalgo Seafoods, Inc. v. Beukers*, 554 P.2d 250, 251, 253-54 (Alaska 1976) (holding that exclusive remedy provision did not preclude suit against employer who knowingly hired employee in violation of child labor law, even though employee had received compensation benefits).

[36]     *See Barber v. New Eng. Fish Co.*, 510 P.2d 806, 811-12 (Alaska 1973) (holding that receipt of workers' compensation benefits did not bar unseaworthiness claim under federal maritime law).

[37]     AS 23.30.082(c); *see also* 8 AAC 45.177 (detailing procedure for claim when employer is uninsured and providing that Fund "may not be obligated to pay"
(continued...)

Fund. Because the Fund's liability derives solely from an employer's liability, any claim against the Fund necessarily required a claim against Welty.

Welty contested the Act's applicability by contending that Tinker was an independent contractor and not an employee; under our precedent the Board and the superior court thus had concurrent jurisdiction.[38] The parties in the civil case discussed the possibility of bifurcating trial, with employee status tried separately before a negligence trial.[39] The settlement set out Tinker's employee status as an issue but did not resolve it, and for the Act's purposes the issue has not been determined as a factual matter. Until Tinker's employee status is decided, the Act's applicability is not established.

Finally, in light of statutory provisions governing the Fund's financing and its payment of claims,[40] we see nothing supporting Welty's superior court assertion that Allstate paid the settlement money "through" the Fund. Nothing in the statute suggests the Fund may act as some type of conduit for private settlement funds.

---

[37] (...continued) claim unless, *inter alia*, parties stipulate that "employee's claim is compensable" or Board so determines).

[38] *See, e.g.*, *Nelson v. Municipality of Anchorage*, 267 P.3d 636, 643-44 (Alaska 2011) (recognizing concurrent superior court and Board jurisdiction about "employee's status at the time of injury").

[39] *See Nickels v. Napolilli*, 29 P.3d 242, 246 (Alaska 2001) (summarizing trial court proceedings, including bench trial to determine whether worker was employee for Act's purposes).

[40] AS 23.30.082(a).

## C. The Settlement Agreement

The superior court decided the settlement agreement, which the Fund drafted as a single document, was "a workers' compensation settlement agreement" because the Board had approved it; the court explained that the only material fact relevant to its decision was the Board's approval. Although the court mentioned the parties' dispute about the agreement's meaning and purpose, the court neither cited nor applied contract interpretation principles until after determining the agreement was "a workers' compensation settlement agreement." The court viewed the matter as one of statutory construction, possibly because the parties focused their arguments on AS 23.30.055 and election of remedies.[41] According to the court, the settlement's language "contravene[d] the legal effects of [the Act]" by using a single document to resolve both the wrongful death claim against Michaelson and the workers' compensation claim in its entirety; the Board's approval demonstrated that Seal had "elected an administrative remedy," received workers' compensation, and thereby foreclosed her ability to continue the wrongful death claim against Welty.

On appeal Welty acknowledges that Seal "plainly did not intend to lose her ability to sue Welty," but he asserts that under AS 23.30.055 Seal nonetheless elected a workers' compensation remedy by entering into the settlement agreement. Welty suggests that Seal might "rescind" the settlement agreement, but he takes no position on that issue's merits.

Seal maintains that the settlement agreement was a resolution of the wrongful death claim against Michaelson, not the election of a workers' compensation

---

[41] As we have noted, the applicability of AS 23.30.055 had not been established when Welty sought summary judgment. We therefore need not decide the AS 23.30.055 election of remedies issue that the parties presented to the superior court and briefed on appeal.

claim. She contends that her ability to continue the civil suit against Welty was a material term of the contract and that the superior court could not interpret the contract "contrary to the clear intent of the parties."

We conclude that the superior court erred by failing to first interpret the settlement agreement to determine the contracting parties' reasonable expectations in light of the requirement that Seal elect between a civil remedy and a workers' compensation remedy. We interpret the agreement as establishing Seal's election of a civil remedy rather than a workers' compensation remedy and resolving both the wrongful death and workers' compensation claims against Michaelson. This purpose is evident from the settlement's language and is supported by the extrinsic evidence Seal provided the court. As required to elect the civil remedy, Seal dismissed the workers' compensation claim in its entirety[42] — because Michaelson's (and the Fund's) potential liability for compensation benefits was dependent on Welty's potential liability as Tinker's employer[43] — and she received no compensation for that claim.

A settlement agreement, including a workers' compensation settlement, "is interpreted in the same manner as any other contract."[44] The goal of contract interpretation "is to give effect to the reasonable expectations of the parties."[45] To determine the parties' expectations, "the court looks to the language of [a] disputed provision, the language of other provisions of the contract, relevant extrinsic evidence,

---

[42] *See* AS 23.20.055.

[43] *See* AS 23.30.045(a), .082(c).

[44] *Williams v. Abood*, 53 P.3d 134, 144 (Alaska 2002) (quoting *Cameron v. Beard*, 864 P.2d 538, 545 (Alaska 1993)).

[45] *Peterson v. Wirum*, 625 P.2d 866, 872 n.10 (Alaska 1981).

and case law interpreting similar provisions."[46]  Contract interpretation is usually a question of law; a court may consider " 'extrinsic evidence surrounding disputed terms,' . . . to determine if those terms are ambiguous — that is, if they 'are reasonably subject to differing interpretation.' "[47]  "When the court finds ambiguity, it must attempt to resolve it by determining the reasonable expectations of the contracting parties."[48]

This case is unusual because the dispute about the contract's meaning is related to its effect as a whole rather than a specific term's construction.  Moreover, the dispute is not between contracting parties; Welty was not a party to the contract.  The superior court nonetheless needed to consider the contracting parties' reasonable expectations and their reasons for entering into the contract before deciding that the contract was solely a workers' compensation claim settlement.

Any possible ambiguity in the settlement came from using one document rather than two to finalize what in essence was a global settlement of two claims in different forums.[49]  We have held that global settlements of workers' compensation

---

[46]    *Id.*

[47]    *Zito v. Zito*, 969 P.2d 1144, 1147 n.4 (Alaska 1998) (quoting *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1046 (Alaska 1977)).

[48]    *Id.*

[49]    *See Rosales v. Icicle Seafoods, Inc.* (*Rosales I*), 316 P.3d 580, 584-85 (Alaska 2013) (describing global settlement of workers' compensation and maritime claims as having "two separate documents, one for each case"); *see also Dimeff v. Estate of Cowan*, 300 P.3d 1, 4 (Alaska 2013) (describing global settlement of claims in different forums using one document).

At least one state court has disallowed using a standard workers' compensation release form to settle claims outside the workers' compensation system and suggested that parties to such agreements execute two documents, one for the workers' compensation claim and one for the claim outside the workers' compensation
(continued...)

claims and related civil claims are permissible;[50] as a policy matter nothing was impermissible in a settlement encompassing both the wrongful death and workers' compensation claims. Welty asserts that Seal "might have a valid point" about interpreting the settlement had she dismissed her workers' compensation claim "unilaterally" and "without any kind of agreement," but he instead concludes that she effectively elected workers' compensation by "dismiss[ing] her workers' compensation claims . . . as part of a settlement." In short, Welty seizes on the form of an agreement to which he was not a party in an attempt to escape liability for Tinker's death.

We have upheld using a settlement agreement to decide which forum would hear a claim when the compensability of an injury was at issue and a claimant filed both a workers' compensation claim and a negligence action.[51] In *Marsh I* different insurers participated in a Board proceeding and a related court proceeding; the employer's general liability insurer and the employee entered into a settlement that "shift[ed] the litigation from the superior court to the compensation board, thus placing the burden of defense on the [employer's] compensation carrier instead of its general liability carrier."[52] We held that the agreement was not void as against public policy[53] and required the Board to hear the merits of that case, even though the Board argued that the

---

[49]    (...continued)
system. *See Claxton v. Waters*, 96 P.3d 496, 502-03 (Cal. 2004).

[50]    *Rosales I*, 316 P.3d at 585 (holding in dispute about settlement of compensation and maritime claims that "nothing prohibits a global settlement of related claims").

[51]    *Marsh I*, 550 P.2d 805, 806-08 (Alaska 1976).

[52]    *Id.* at 807.

[53]    *Id.* at 808.

settlement converted the Board proceeding into one for a declaratory judgment, which was beyond its jurisdiction.[54]

Similar to *Marsh I*, the parties to the two proceedings were not identical; in this case the settlement agreement specifically dismissed the Board proceeding, shifting the litigation from the Board to the superior court.[55] In *Marsh I* we considered the parties' intent in settling and gave it effect; we do the same in this matter.

The settlement agreement language read as a whole supports the conclusion that it was a global settlement in which the estate elected to pursue the wrongful death case and forgo any potential workers' compensation benefits. The settlement agreement contained detailed information about both claims, and the caption included both the Board's case number and the superior court case number, supporting the conclusion that the settlement affected both claims. The settlement agreement explicitly stated that the estate elected the wrongful death action as its remedy against both Michaelson and Welty: "Seal and Michael Tinker also agree that by entering into this Agreement, *Seal has made an election of remedies under AS 23.30.055 to pursue a civil action against Welty and Michaelson . . . .*" (Emphasis added.) No money was explicitly allocated to settlement of the workers' compensation claim in the settlement agreement,[56] and the settlement agreement's provisions for costs and attorney's fees were based on Alaska

---

[54] *Id.* at 807-09. The Board ultimately decided the claim was not compensable. *Marsh v. Alaska Workmen's Comp. Bd.*, 584 P.2d 1134, 1135 (Alaska 1978).

[55] *Cf. Marsh I*, 550 P.2d at 808-09 (observing that civil suit was "pending in a technical sense only" after employee "contractually abandoned his right to litigate his tort claim" when he entered into contingent settlement).

[56] *See Rosales I*, 316 P.3d 580, 582-83 (Alaska 2013) (describing allocation of global settlement funds between maritime and workers' compensation cases); *see also Marsh I*, 550 P.2d at 807 (describing settlement agreement).

Civil Rules 79 and 82, governing civil cases, not on the Act and ancillary Board regulations.[57]

The parties agree that Allstate paid the settlement money under Michaelson's landlord liability policy, not under a workers' compensation policy.[58] The settlement agreement does not indicate that Allstate was a party to the Board proceedings, as a compensation carrier would be.[59] Although Welty contends the settlement funds' source is immaterial to the legal conclusion that the funds were compensation benefits,[60] Allstate fulfilling its contractual obligation under Michaelson's landlord liability policy evinces an intent to settle a tort claim, not a workers' compensation claim. If the injury were not conceivably within Allstate's contract with Michaelson, Allstate would have no reason to pay the estate a significant sum of money, as it agreed to do in the settlement.

---

[57]     *See* AS 23.30.145 (authorizing Board to award attorney's fees and costs); 8 AAC 45.180 (setting out procedure for Board award of attorney's fees and costs).

[58]     The Act has provisions specific to workers' compensation insurance, *see* AS 23.30.025, .030, and it defines "carrier" as "a person authorized to insure under [the Act] and includes self-insurers," AS 23.30.395(6). There is no suggestion in the record that Allstate's policy with Michaelson met the statutory standards.

[59]     8 AAC 45.170(b)(2) (designating "employer and its insurance carrier, if any" as parties to proceeding).

[60]     The out-of-state case Welty cites to support his argument is unpersuasive. Workers' compensation claim coverage by the errors and omissions insurer of a broker who failed to procure workers' compensation insurance on a client's behalf is not analogous to this dispute. *See Vogel v. Hochhalter*, 516 N.W.2d 214, 216-17 (Minn. App. 1994). The Minnesota court observed that the employer had "fulfilled the duty imposed on employers" under Minnesota law by "appl[ying] for workers' compensation insurance through his agent" and thus should be granted the protection against tort claims provided to insured employers. *Id.* No one in Seal's case had compensation coverage, and Welty's general liability insurer denied coverage for the claim.

Extrinsic evidence also supports interpreting the agreement as an election and settlement of the tort claim against Michaelson with a dismissal of the workers' compensation claim. Seal plainly told the Board her primary goal was pursuing a tort remedy when she filed her written workers' compensation claim. The Board, "with the agreement of the parties," delayed action in the compensation proceeding so that Seal could pursue the civil litigation. Seal supplied the superior court email correspondence between her attorney and Michaelson's attorney showing an intent to settle the wrongful death action. She also provided an earlier draft settlement agreement from Michaelson's attorney. Under its terms she would have settled with Michaelson and agreed to dismiss the compensation claim; an accompanying email asked the estate to provide a separate agreement with the Fund to dismiss the compensation claim. Seal asserted that the Fund then requested the settlement be submitted to and approved by the Board,[61] and the agreement is on Department of Law letterhead. Welty's attorney was included in the email correspondence related to the settlement, and Welty offered no evidence rebutting Seal's evidence or her assertion about the Fund's request that the settlement be placed before the Board.

Welty contends that the settlement agreement violates public policy because it would allow the estate to continue the wrongful death action against him after the estate received workers' compensation. But we find nothing in the record supporting Welty's argument that the money paid to Seal was a workers' compensation benefit or that the parties to the settlement agreement were attempting to "evade the law" by drafting one document. Nor is there support for the superior court's implication that the

---

[61] Seal included in her supplemental excerpt of record more emails to substantiate these arguments. But the emails do not appear to be part of the superior court record, and we disregard them.

contracting parties attempted to "avoid the effects of the law" through "self-serving contract language."

We repeatedly have held that settlements of disputed claims are favored.[62] We also have said that "[a]s a matter of judicial policy the court should maintain and enforce contracts."[63] Although we have refused to enforce settlements that are against public policy,[64] Welty's public policy argument rests entirely on the faulty premise that the settlement was a workers' compensation settlement providing workers' compensation benefits to the estate.

**D.      Alaska Statute 23.30.012 And Its Application To The Settlement Agreement**

The superior court interpreted AS 23.30.012 to mean that the settlement funds "consitute[d] 'compensation' under [the Act] as a matter of law." Because under AS 23.30.012 a Board-approved agreement "is enforceable the same as an order or award of the Board," the court reasoned that "the settlement proceeds are equivalent to a workers' compensation award," even if the settlement agreement made plain Seal's election of the civil suit as a remedy.

---

[62]      *E.g., Kazan v. Dough Boys, Inc.*, 201 P.3d 508, 514-15 (Alaska 2009) ("We encourage and favor settlements between parties because they reduce demand for judicial resources.").

[63]      *Id.* at 514 (quoting *Inman v. Clyde Hall Drilling Co.*, 369 P.2d 498, 500 (Alaska 1962) (citing *Baltimore & Ohio Sw. Ry. v. Voight*, 176 U.S. 498, 505 (1900)).

[64]      *See McKeown v. Kinney Shoe Corp.*, 820 P.2d 1068, 1070-71 (Alaska 1991) (holding private settlement of liquidated damages claims under Alaska Wage and Hour Act void as against public policy); *Juliano v. Angelini*, 708 P.2d 1289, 1291 (Alaska 1985) (holding settlement provision classifying proceeds as capital gain rather than income void as against public policy).

Alaska Statute 23.30.012 allows parties to "reach an agreement in regard to a claim for injury or death under [the Act]." The statute requires that "a memorandum of the agreement in a form prescribed" be filed with the Division of Workers' Compensation;[65] agreements that do not conform to this requirement are "void for any purpose."[66] As we noted earlier, if a party to a settlement is not represented by Alaska counsel, the Board is required to review and approve the settlement.[67] Board approval is not required when all parties are represented by Alaska counsel.[68] In either event, the settlement is "enforceable as a compensation order."[69]

Welty asks us to affirm the superior court's decision, contending, as he did in the superior court, that the Board's approval of the settlement agreement transmuted money Allstate paid as part of its coverage under Michaelson's landlord liability insurance policy into workers' compensation benefits. In Welty's view, the settlement agreement "became enforceable for any purpose to the same extent as an order or award of the Board," making it "equivalent to a final judgment of the Board." He reasons that the Board "would have no jurisdiction to approve or reject the settlement agreement if it did not involve a claim for workers' compensation benefits against an employer."

Because the settlement agreement contained provisions related to the wrongful death claim, the Board did not have jurisdiction over all of its aspects. But the Board, and the Board alone, had jurisdiction to dismiss the workers' compensation claim

---

[65]    AS 23.30.012(a).

[66]    *Id.*

[67]    AS 23.30.012(b).

[68]    AS 23.30.012(a).

[69]    *Id.*

against Welty, the Fund, and Michaelson. To determine whether dismissal was in the claimants' best interests, the Board needed information about the related tort settlement.[70] The resolution gave the Board that information by expressing Seal's election of a civil remedy and merging the tort settlement and the workers' compensation claim dismissal into one global settlement agreement.[71] The Board's approval of the workers' compensation claim dismissal did not change the nature of the underlying settlement. Using two documents rather than one might have avoided some of this litigation,[72] but we see nothing in the statute prohibiting the settlement agreement form the parties used.

Interpreting the statute as the superior court did could result in expanding the Board's granted jurisdiction by sanctioning its enforcement of provisions not within the Act. Alternatively, the parties to such a settlement could be left with limited or no remedies in the event of a later disagreement.[73] For example, Welty does not explain how the Board, as an administrative agency with limited powers and statutory constraints

---

[70]    *See* 8 AAC 45.160(d)(2)(A) (requiring Board to find that settlement is in employee's best interests before approval); *see also Rosales I*, 316 P.3d 580, 583 (Alaska 2013) (noting that Board initially rejected settlement because it could not determine claimant's best interests).

[71]    The Board's regulation requires, *inter alia*, a statement from the parties that the settlement "contains the entire agreement among the parties" and "is not contingent on any undisclosed agreement." 8 AAC 45.160(c)(7).

[72]    *But see Rosales I*, 316 P.3d at 580 (addressing disputes between parties who had settled using two separate documents).

[73]    Disagreements about a settlement's meaning and effect are not uncommon in either the civil arena or workers' compensation. *See, e.g., Dimeff v. Estate of Cowan*, 300 P.3d 1 (Alaska 2013); *Rosales I*, 316 P.3d at 580.

on enforcement,[74] could have ordered Seal to dismiss the civil claim against Michaelson had she not done so after Allstate's payment. Nor does he explain how the Board, after approval of the settlement and dismissal of the workers' compensation claim, could have required Allstate to pay the promised funds had it failed to do so. And if the money paid under the settlement were "compensation," as the superior court decided, Allstate or Michaelson would have limited means of recovering the money had Seal refused to comply with the settlement agreement.[75]

In *Rosales I* the parties used two documents to finalize their global settlement; we noted that the Board had jurisdiction only to approve the workers' compensation settlement, not the maritime settlement, and that nothing in the record supported Rosales's argument that the Board took any action on the maritime settlement.[76] We do not have the Board's record before us in this case and thus do not know whether the Board questioned the parties about the settlement agreement, but the superior court had no evidence suggesting that the Board had approved anything beyond the agreement provisions within its jurisdiction: dismissing with prejudice the workers' compensation claim to effectuate Seal's election of remedies. The form parties use for a global settlement agreement cannot expand an agency's jurisdiction, and AS 23.30.012 did not transmute funds paid for a civil settlement into workers' compensation benefits.

---

[74] *See* AS 23.30.170 (setting out Board's enforcement powers, including, in case of default, issuing supplementary order for filing in superior court).

[75] *See* AS 23.30.155(j) (providing that employer may recover compensation overpayment by withholding up to 20% of future compensation payments); *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991) (holding that AS 23.30.155(j) is sole method for employer to recover compensation overpayment).

[76] 316 P.3d at 585.

Because AS 23.30.012 permits the Board to sanction only agreements regarding workers' compensation claims, the only part of the settlement agreement subject to Board approval and enforceable as an order of the Board was the estate's dismissal with prejudice of the workers' compensation claim. Nothing in the Act prohibits the estate from electing to dismiss the workers' compensation proceeding, settle the wrongful death claim against Michaelson, and continue to litigate a wrongful death claim against Welty. The money Allstate paid to settle the wrongful death claim against its insured remained tort settlement proceeds.

## V.  CONCLUSION

We REVERSE the superior court's grant of summary judgment, VACATE the final judgment, and REMAND for further proceedings.